APR 27 2023 AM 9:32
FILED - USDC - BPT - CT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SELF-STORAGE CONTAINER (UNIT #E3) LOCATED AT LOCAL STORAGE, 194 OLD TOWN FARM ROAD, WOODBURY, CT. | Case No. 3:23 mj 391 (SDV)<br><br>**Filed Under Seal**<br><br>April 27, 2023 |

## AFFIDAVIT IN SUPPORT
## OF APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, Nathaniel May, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, herby depose and state as follows:

### INTRODUCTION

1. I submit this affidavit in support of a search and seizure warrant in relation to violations of 18 U.S.C. §§ 922(g)(3) (unlawful possession of firearms and ammunition by user of a controlled substance) and (g)(8) (unlawful possession of firearms and ammunition in violation of a court order) and 26 U.S.C. § 5861(d) (possession of an unregistered firearm, in violation of the National Firearms Act ("NFA")) (hereinafter, the "TARGET OFFENSES"), for the following premises: a self-storage unit (Unit #E3) with a green door and clearly labeled "E3" above the door, located at Local Storage, 194 Old Town Farm Road, Woodbury, Connecticut (hereinafter, the "TARGET PREMISES").

### BACKRGOUND

2. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516

1

of Title 18. I have been employed by ATF since August 2020. Prior to my employment with ATF, I worked as a licensed professional fire protection engineer for West Coast Code Consultants, Inc. for two years. I graduated from the University of Maryland in December 2015 with my Bachelor of Science Degree and May 2017 with my Master of Science Degree, both in Fire Protection Engineering. I have completed the Criminal Investigator Training Program ("CITP") and the ATF Special Agent Basic Training program ("SABT"), both of which were conducted at the Federal Law Enforcement Training Center ("FLETC") in Glynn County, Georgia. I have received specialized training in firearms identification and the investigation of firearms-related offenses. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of drugs; and the use of firearms in the commission of violent acts. I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs. As such, I have coordinated the controlled purchases of drugs utilizing confidential sources and undercover law enforcement officers; written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and drugs; conducted surveillance of individuals involved in illegal firearm and drug distribution; analyzed records documenting the purchase and sale of firearms and illegal drugs; and spoke with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and distribute illegal firearms and drugs. I have received training, both formal and on-the-job, in the provisions of the federal firearms and drug laws administered

under Titles 18, 21 and 26 of the United States Code.

## DEFINITIONS

3. **The National Firearms Act ("NFA")**, 26 USC § 5801, *et seq.*, regulates a subset of the firearms covered by the Gun Control Act.

   a. The NFA applies only to certain firearms and weapons, including, but not limited to machine guns, silencers, short-barreled rifles, short-barreled shotguns, and some other types of weapons, termed "destructive device" and "any other weapon," as defined in 26 USC § 5845. *See* 26 U.S.C. § 5845. Based on my training and experience, I am aware that some firearms fall into the purview of the NFA only because they are shorter in length than other similar firearms of their type. This is because shorter firearms are more easily concealable on the person.

   b. The NFA directs the ATF to maintain a registry, the National Firearms Registration and Transfer Record ("NFRTR"), of all NFA-regulated firearms and weapons in the United States that are not under the possession or control of the United States government. *See* 26 U.S.C. § 5841.

   c. Manufacturers of NFA weapons must register these weapons upon manufacture. Furthermore, any transfer of an NFA weapon must be approved by ATF before it can be completed. Manufacturers and transferors also owe a tax on each respective transaction. The NFA provides that it is unlawful for any person (or entity) to receive or possess any NFA-regulated firearm or weapon that is not registered to him or her (or it). *See* 26 U.S.C. § 5861(d). Furthermore, before any NFA-regulated firearm or weapon is transferred from one person (or entity) to another, the transferor and transferee must complete an application form, the form must be approved by ATF, and the transferor must pay a transfer tax of $200. *See* 26 U.S.C. §§ 5811-5812. Any firearm or weapon in violation of the NFA is subject to seizure and forfeiture by the United States. *See* 26 U.S.C. § 5872.

## PROBABLE CAUSE

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5. I am currently assigned to the ATF Hartford Field Office. I have been investigating the possession of firearms, some of which are suspected to be in violation of the NFA, by Anthony ENGLEHARDT ("ENGLEHARDT"), YOB 1979, who had been ordered by the court, via a protective order, to surrender all firearms and ammunition. More specifically, information developed during this investigation indicated that ENGLEHARDT may be concealing and storing firearms at the TARGET PREMISES. In addition, the investigation also revealed that ENGLEHARDT was likely a user of illegal substances at the time of his recent possession of firearms and ammunition.

## INVESTIGATION

6. On July 17, 2022, the Southbury Police Department ("SPD") met with ENGLEHARDT at their headquarters located at 421 Main Street South in Southbury, Connecticut. ENGLEHARDT told officers that he had received an Order of Protection (the "2022 protective order") from the Waterbury Superior Court indicating that he had to surrender all firearms and ammunition. The 2022 protective order restrained him from making contact with a person, Victim-1, who I know to be ENGLEHARDT's ex-wife. The 2022 protective order indicated an expiration date of July 2023. ENGLEHARDT provided SPD with a copy of the protective order, which included prohibitions from possessing and/or purchasing firearms and ammunition as well as provisions to surrender all firearms and ammunition. ENGLEHARDT proceeded to turn over eight (8) firearms to the SPD, along with an unknown amount of ammunition. ENGLEHARDT also signed and initialed a "Surrender Firearms/Ammunition Log Sheet" and the "Firearm and Ammunition Compliance Statement." SPD also mailed ENGLEHARDT's pistol permit to the Connecticut State Police ("CSP") Special Licensing and Firearms Unit.

7.      Since 2022, a recent query of ENGLEHARDT's Connecticut State Pistol Permit indicated that ENGLEHARDT still had six (6) firearms on his permit that he did not turn over to SPD following his receipt of the 2022 protective order.

8.      On March 13, 2023, at approximately 11:50 p.m., members of the Torrington Police Department ("TPD") were dispatched to an address on Linden Street in Torrington, Connecticut, known in full by me, for a report that ENGLEHARDT had just left the residence after shooting a hole in the ceiling with a rifle he still had in his possession. The caller (known to the affiant, and known to be a romantic partner of ENGLEHARDT, hereinafter referred to as "Victim-2") indicated that ENGLEHARDT had left in a Chevy Cruze bearing Connecticut registration BF-79452. Victim-2 reported that ENGLEHARDT was heading back to his residence, located at an address known in full to me on Bucks Hill Road, Southbury, Connecticut. At the Linden Street residence, responding TPD Officers located a .300 blackout caliber shell casing which was located on the floor of Victim-2's bedroom. Victim-2 pointed out the hole in the ceiling where the projectile entered. Victim-2 stated that ENGLEHARDT only pulled the trigger once. Then, when Victim-2 stated he/she was calling the police, ENGLEHARDT responded that he would "shoot them too," or words to that effect. Victim-2 stated that ENGLEHARDT then put the rifle inside his mouth and said, "I will kill myself right here," or words to that effect. Only when Victim-2 yelled for his/her landlord, did ENGLEHARDT leave. Victim-2 stated that he/she believed ENGLEHARDT had been under the influence of drugs, as he/she had known ENGLEHARDT to use cocaine, adding that he/she believed ENGLEHARDT had been preparing to use cocaine at his/her apartment that night. Victim-2 also told TPD that ENGLEHARDT had an active protective order with his ex-wife (Victim-1) and was not supposed to be in possession of any firearms.

Victim-2 stated in sum and substance that he/she had been to ENGLEHARDT's residence and had observed at least six (6) firearms in multiple safes as well as ammunition and other firearms parts.

9. TPD officers also contacted Victim-2's landlord, who verified Victim-2's story, telling TPD Officers that he/she resided on the second floor (just below Victim-2, who resided in the third-floor apartment). In sum, the landlord reported hearing screaming and commotion coming from Victim-2's apartment and then heard a loud "pop." The landlord walked up to the third floor and observed ENGLEHARDT departing the residence with a backpack on and carrying a black rifle. The landlord stated that he/she asked if ENGLEHARDT had fired the gun and ENGLEHARDT stated "yeah," and made a reference to Victim-2 "not letting him go," or words to that effect. The landlord then checked on Victim-2 and saw the bullet hole in the ceiling. Notably, of the six remaining firearms on ENGLEHARDT's Connecticut State Pistol Permit, none are chambered for .300 blackout, which is the caliber casing TPD found in Victim-2's apartment. At the time of the Torrington incident, ENGLEHARDT was pretrial release on a $75,000 bond for charges out of Waterbury, Connecticut, relating to unlawful restraint, threatening, and assault stemming from a July 2022 incident.[1]

10. On March 14, 2023, at approximately 12:30 a.m., CSP located and conducted a motor vehicle stop on the Chevy Cruze bearing CT registration BF-79452. The driver and sole occupant of the vehicle was ENGLEHARDT. CSP asked ENGLEHARDT about the rifle used at Victim-2's apartment and ENGLEHARDT stated that he had tossed the rifle in Thomaston, Connecticut, somewhere near a Cumberland Farms and a school. ENGLEHARDT then changed his story and stated that he tossed the rifle on Route 6, near the Taft School, Watertown,

---

[1] Based on the timing of the Waterbury charges, it is possible that the case relates to Victim-1.

Connecticut. Multiple municipalities were informed of the missing firearm and a search was conducted, to include the use of a CSP Firearm K-9, but efforts to find the rifle failed. ENGLEHARDT was taken into custody and charged at TPD with Unlawful Discharge of a Firearm, Reckless Endangerment-1, Tampering with Evidence, Criminal Possession of a Firearm, Violation of a Restraining Order, Breach of Peace-2, and Criminal Mischief-3. ENGLEHARDT was read his Miranda rights and refused to answer any questions.

11.     Also on March 14, 2023, TPD applied for and were granted a search warrant of ENGLEHARDT's vehicle, the Chevy Cruze bearing CT registration BF-79452 and a Risk Protection Order warrant for ENGLEHARDT's residence at the address on Bucks Hill Road in Southbury. TPD and SPD responded to the Southbury residence to execute the warrant. Officers were met by ENGLEHARDT's uncle, with initials W.E. and whose name is known in full to me, who stated that ENGLEHARDT had been renting from him at that location for the past year. W.E. stated that he knew ENGLEHARDT had firearms but did not know he was not supposed to have them. The execution of the search warrant revealed six (6) suspected silencers (which, based on my initial assessment, are unregistered to ENGLEHARDT in the NFRTR and thus in violation of the NFA), ten (10) firearms (three of which, based on my training and experience, are suspected of being in violation of NFA as they are suspected of being sawed-off shotguns and a short-barreled rifle and unregistered to ENGLEHARDT in the NFRTR), and over 1,000 rounds of ammunition, to include .300 blackout caliber rounds, which is the type of shell casing found in Victim-2's bedroom on March 13, 2023. Other items located during the search included two plate carriers, multiple firearms magazines, a gas mask and miscellaneous firearms parts and accessories.

12. On March 15, 2023, TPD executed the search warrant on ENGLEHARDT's vehicle. Three (3) cellphones were seized, as well as a laptop, but no firearms or ammunition were found. Additionally, suspected drugs were seized from the vehicle, concealed in a sunglasses case, which included an unknown powdery substance (suspected to be cocaine) in two baggies, as well as a spoon. On April 18, 2023, TPD field tested the suspected cocaine seized from ENGLEHARDT's vehicle, which resulted in a presumptive positive for the presence of cocaine.

13. On March 21, 2023, TPD Officers received an email from Victim-2, which read "I spoke with [ENGLEHARDT's] uncle earlier and he informed me that all of the illegal stuff was confiscated at his house. I'm curious if you know about the storage unit as well? There's alot [*sic*] more in there."

14. On March 21, 2023, further discussion with Victim-2 revealed that ENGLEHARDT had told Victim-2 previously that he wished he could "kill everyone." Victim-2 stated that ENGLEHARDT told him/her that he (ENGLEHARDT) had places in the woods to stash firearms or anything he did not want police to find. Victim-2 was not sure if ENGLEHARDT's storage unit was in Woodbury or Southbury because he/she had never been to it. Victim-2 stated that ENGLEHARDT told him/her that there was "militia equipment and ammunition" in the storage unit. Victim-2 called Local Storage, located at 194 Old Town Farm Road, Woodbury, Connecticut, and by inputting ENGLEHARDT's telephone number (ending in -7834 and known in full to me) into the automated system, it confirmed that an account was active for the person associated with that number. Moreover, Victim-2 stated that he/she had helped ENGLEHARDT sell a camouflage vest through Facebook and ENGLEHARDT told Victim-2 that

there were plenty of other items he could sell that were in the storage unit (the TARGET PREMISES).

15.     Based on the information from Victim-2, on March 21, 2023, TPD contacted Local Storage. Local Storage provided TPD with information that indicated ENGLEHARDT had a self-storage rental unit (Unit #E3, the TARGET PREMISES) since approximately August 23, 2022. Local Storage explained that ENGLEHARDT would need to use a keypad to enter the facility and then a separate key to access their specific unit. Local Storage is also alarmed after hours. A query by Local Storage indicated that on March 13, 2023, during the morning hours, someone utilized ENGLEHARDT's passcode to enter the facility. Local Storage indicated that this was the last time ENGLEHARDT's passcode had been utilized. A review of available video footage from Local Storage by TPD revealed that the person associated with using ENGLEHARDT's passcode appeared to be a white male in dark clothing carrying what looked like a tool bag. The tool bag appeared to be the same one recovered by TPD after executing the search warrant of ENGLEHARDT's vehicle. No firearms or firearms parts were found in the tool bag during the search warrant.

16.     On March 27, 2023, TPD received information from the Connecticut Department of Corrections ("CT DOC") that ENGLEHARDT had spoken to a female over a recorded telephone line from prison. According to CT DOC, ENGLEHARDT indicated that he had turned in his pistols and just one rifle but had held on to all the other modified rifles. ENGLEHARDT never mentioned how many of those rifles he had in his possession. ENGLEHARDT also mentioned in the call that he had valuable things to sell besides his guns, like scopes, night vision goggles, a military-grade helmet, and several armored vests.

17. On April 4, 2023, ENGLEHARDT posted bond and was discharged from CT DOC and was placed on Intensive Pretrial Condition ("IPC"). As part of that condition, ENGLEHARDT has an ankle bracelet that will emit his movement 24-hours per day. ENGLEHARDT was also ordered to house arrest. To the best of my knowledge, ENGLEHARDT has not visited the TARGET PREMISES since his release on bond.

18. Also on April 4, 2023, ATF Hartford took custody of the pertinent firearms-related evidence in this case, to include six (6) suspected silencers bearing no markings, one Savage, model 311D, 12 gauge shotgun bearing no serial number and suspected to be a sawed-off shotgun, one Colt, model Match Target Competition HBAR, .223 caliber rifle bearing serial number #CCH040893 and suspected to be a short-barreled rifle, and one Winchester, model 140 Ranger, 12 gauge shotgun bearing serial number #N952526 and suspected to be a sawed-off shotgun. All these items are currently at the ATF Firearms Technology Criminal Branch ("FTCB"), awaiting analysis and determination. If investigators' suspicions are correct, all these items would have been possessed illegally by ENGLEHARDT, in violation of the NFA.

19. On April 13, 2023, ATF Hartford conducted a query of ENGLEHARDT, which indicated that there are two (2) active protective orders in place against ENGLEHARDT. The first is related to Victim-1 and was active at the time of the March 13-14, 2023 incident. The second is related to Victim-2 and is a result of the events described above.

20. ENGLEHARDT was supposed to hand over all his firearms and ammunition after he was issued the July 2022 protective order. By turning in some firearms, but not all, to law enforcement, it appears that ENGLEHARDT knew he had to comply, yet did not do so at Southbury Police Department. ENGLEHARDT then utilized a .300 blackout caliber firearm to

shoot a hole in the ceiling of Victim-2's apartment in March 2023. ENGLEHARDT did not have a single .300 blackout caliber firearm listed on his pistol permit. Victim-2 indicated to TPD that ENGLEHARDT had additional firearms at his home in Southbury. This information proved credible and accurate when TPD executed their search warrant at ENGLEHARDT's residence, seizing a total of ten (10) additional firearms, six (6) suspected silencers and over 1,000 rounds of ammunition, though no .300 blackout caliber firearm was located. Vicitm-2 then indicated to law enforcement that ENGLEHARDT had additional items inside of a storage unit, to include "militia equipment," ammunition and what investigators believe to be more firearms, firearms parts, and suspected silencers. It is evident that ENGLEHARDT is attempting to thwart law enforcement efforts, displayed by his unwillingness to share where he hid the .300 blackout caliber firearm he used on March 13, 2023, as well as the recorded CT DOC call where ENGLEHARDT indicated he had only turned in a select number of firearms and kept the others he had modified.

## BACKGROUND ON FIREARMS VIOLATIONS

21. As set forth in my detail above, I have investigated and participated in numerous operations involving the criminal possession, procurement, construction, sale and distribution of firearms. I know, based upon my training and experience, that criminals involved in the illegal possession, purchase, modification or transfer of firearms routinely maintain evidence obtained from illegal activity, including records indicating various illegal payments, procurements, and anticipated purchases. Moreover, I know that individuals involved in the illegal possession of firearms not only possess firearms and ammunition but also evidence relating to the acquisition of said items such as shipment labels and purchase receipts. Additionally, I know that individuals that unlawfully possess and modify firearms maintain tools, such as drills, specific bits and other

11

machinery for the construction and assembly of such items. I also know that individuals that unlawfully possess and modify firearms utilize electronic devices, such as cellular phones, mobile and desktop computers, etc., to research and document firearm, ammunition, and firearm accessory purchases, to take photographs and record videos of said firearms, ammunition, and accessories, to use GPS mapping that could provide locations of possible firearm and ammunition stash locations, and to converse with other individuals related to firearms and ammunition via various methods and modes (voice call, SMS messages, email, social media platforms like Facebook, etc.).

22. Based upon my training, experience, and participation in this and other firearms investigations, as well as information provided to me by other law enforcement officers involved in the investigation of illegal firearms possession, I know that:

　　a. Most people store their firearms in a location where they exercise dominion and control.

　　b. Firearms and related components are not readily disposed of by individuals.

　　c. Persons who possess firearms usually possess other items related to firearms, such as: stocks, barrels, receivers, frames, jigs, optics, gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, photographs of firearms and receipts for the purchases of these items, containers/boxes that were purchased with the firearm(s).

　　d. Persons who unlawfully possess firearms/silencers often maintain records that reflect their financial dealings.

　　e. Persons who unlawfully possess firearms/silencers maintain parts, tools and machinery used in the construction of said firearms and/or devices.

　　f. Persons who unlawfully possess firearms maintain records related to the acquisition of materials to include bills, shipping labels and shipping boxes.

　　g. Persons possess, in a location in which they exercise, dominion and control, documents which indicate their occupancy and/or ownership, such as:

      i. Personal mail, check books, identification, notes, correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs, leases, mortgage bills, vehicle registration information, ownership warranties, and telephone answering machine introductions.

## CONCLUSION

23. It is this affiant's belief that ENGLEHARDT has firearms, silencers, firearms parts and accessories and ammunition, or evidence thereof, stored at the TARGET PREMISES. Based on Victim-2's statements, as well as the evidence collected by TPD, it is also my belief that ENGLEHARDT is unlawfully in possession of NFA firearms and silencers and further unlawfully in possession of ammunition.

24. I have probable cause to believe, and I do believe, that the items described in Attachments A-1, which constitute evidence, contraband, fruits, or instrumentalities of violations the TARGET OFFENSES will be located at the TARGET PREMISES. Further, I believe that the proprietors of the TARGET PREMISES will facilitate law enforcement's search of the TARGET PREMISES outside of regular business hours, if necessary. Based on ENGLEHARDT's disturbing behavior, including stating that he wanted to "kill everyone" and also allegedly placed a firearm in his mouth and threatened suicide, combined with his past attempts to thwart law enforcement's efforts to investigate and/or recover firearms from him, I believe it may be necessary to search the TARGET PREMISES at whatever time, day or night, at the soonest and most practicable opportunity.

25. I believe that public disclosure of this Affidavit, the requested search warrant, and seizure warrant may: compromise the ongoing investigation; cause potential witnesses to flee or

not come forward in fear of prosecution; cause individuals to destroy physical evidence or conceal proceeds of criminal activity; and jeopardize the safety of law enforcement officers. I therefore respectfully request that the Court order that this Affidavit, and the search and seizure warrant, and all attachments thereto be sealed under further order of the Court. This request for sealing may be addressed in a separate order.

Nathaniel May
Special Agent, ATF

The truth of the foregoing affidavit has been attested to me, under oath SDV by Special Agent Nathaniel May on this 27th day of April 2023, at Bridgeport, Connecticut.

SDV

HONORABLE S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## PLACE TO BE SEARCHED

### SELF-STORAGE UNIT #E3 WITH A GREEN DOOR, OWNED BY ANTHONY ENGLEHARDT AND LOCATED AT 194 OLD TOWN FARM ROAD, WOODBURY, CT

The TARGET PREMISES, a self-storage unit (#E3) with a green door and clearly displaying "E3" above the door, and with a padlock in place is located at 194 Old Town Farm Road, Woodbury, CT.



15



## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED
### SELF-STORAGE UNIT #E3 WITH A GREEN DOOR, OWNED BY ANTHONY ENGLEHARDT AND LOCATED AT 194 OLD TOWN FARM ROAD, WOODBURY, CT

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use of which is or has been used as the means of committing a criminal offense, namely, violations of 18 U.S.C. §§ 922(g)(3) (unlawful possession of firearms and ammunition by user of a controlled substance) and (g)(8) (unlawful possession of firearms and ammunition in violation of a court order) and 26 U.S.C. § 5861(d) (possession of an unregistered firearm, in violation of the National Firearms Act ("NFA")) (hereinafter, the "TARGET OFFENSES"):

a.  books, records, receipts, notes, ledgers, and other papers and documentation relating to the communication, orders and processing, storage, transportation, payment, acquisition and/or distribution of firearms, firearms parts, and/or tools and equipment used in the possession and/or alteration of firearms.

b.  records of firearms transactions; the evidence of financial transactions relating to obtaining, transferring, secreting or spending of sums of money for the procurement of firearms and other NFA items (silencers, etc.).

c.  tools, drill bits, machining items and other evidence that supports the modification or alteration of firearms.

d.  cellular telephones, mobile telephone bills and address books and any other records or document reflecting telephone numbers.

e.  addresses or telephone numbers in books, papers, cellular telephones, tablets or computers, and their electronically stored contents, which reflect names, addresses, telephone numbers of and communications to or from their associates and/or clients in the unlawful possession of firearms and/or suppliers of firearms, firearms parts and/or tools and equipment used in the modification of firearms; photographs and videotapes of participants and associates in the unlawful possession of firearms and property acquired as a consequence of unlawful possession of firearms;

f.  firearms, firearms parts, firearm components, silencers, silencer parts and ammunition.

g.  safes and other secure storage containers and their contents.

h.  identification documents and keys evidencing a possessory interest in premises, vehicles, and storage containers.

i.  Devices used to facilitate, document, or in the commission of the TARGET OFFENSES, including but not limited to cellphones.

17